**UNITED STATES of America,
Plaintiff,**

v.

**1,100 MACHINE GUN RECEIVERS,
Defendants.**

No. 2:97CV00491C.

United States District Court,
D. Utah,
Central Division.

Aug. 26, 1999.

Mr. Bill Ryan, AUSA, Salt Lake City, UT, for plaintiff.

Mr. John A. Adams, Salt Lake City, UT, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CAMPBELL, District Judge.

The United States has brought this action seeking to forfeit the defendants, 1095 alleged machinegun receivers. Interport, Inc. ("Interport") is the claimant. Trial was held before the court, sitting without a jury, on July 15–16, 1999. The court took the matter under advisement.

The court has reviewed the evidence received, and considered the arguments of counsel and the applicable law. Pursuant to Federal Rule of Civil Procedure 52, the court now enters its findings of fact and conclusions of law.

### FINDINGS OF FACT

Interport was incorporated in 1985. The primary business of Interport is importing firearms and firearm parts into the United States. William York is the president and authorized agent of Interport. York has been involved for many years in the firearm industry and has testified as an expert in litigation involving firearms.

On October 28, 1994, Interport submitted to the Bureau of Alcohol, Tobacco and Firearms (ATF) a form entitled "Application and Permit for Importation of Firearms, Ammunition and Implements of War." (Pl.'s Ex. 10). This form is commonly known as a "Form 6." York prepared and signed the Form 6.

York, on behalf of Interport, wrote on the Form 6 that Interport was applying to import "Spare parts for AKM[1] type Military Rifle (as per attachment) NO RECEIVERS!" (Pl.'s Ex. 10). The list

---

1. The AK is a Russian shoulder-mounted machinegun. The weapon has been copied by many governments and private manufacturers. The AKM is one variation of the AK machinegun.

attached to the Form 6 identified the defendants as "FIRE CONTROL BOX—cut from rifle." (*Id.* at 2). York thought of the term "fire box" himself. (Pl.'s Ex. 22 at 4).

When the ATF approves a Form 6 application, a number is stamped on the face of the form; the Form 6 then is no longer an application but becomes the permit allowing importation of firearms. On November 22, 1994, ATF approved Interport's application and issued Permit No. 94–13811. The ATF stamped on the front of the Form 6: "NO FIREARMS, FRAMES, RECEIVERS OR ACTIONS FOR FIRE-ARMS ARE AUTHORIZED FOR IM-PORTATION UNDER THIS PERMIT." (Pl.'s Ex. 10).

Defendants were shipped with the other AKM parts from Germany to the United States at the direction of Interport. They arrived in San Francisco in January 1995 and were transported to Salt Lake City, Utah, the official port of entry.

After inspecting the shipment, inspectors from the United States Customs Service ("Customs") allowed all items except the defendants to be released to Interport. Customs requested an opinion from ATF whether the defendants were AKM receivers. On January 30, 1995, based on ATF's opinion that defendants were receivers, Customs inspectors seized the defendants as merchandise being introduced into the United States in violation of law.

The United States contends that the defendants are receivers and therefore subject to forfeiture. Interport contends that the defendants are "scrap" and not receivers because, as they exist in their present state, the defendants cannot receive a barrel. The parties stipulated that the defendants fall into eight categories, depending on their length and whether they contain internal parts. The defendants vary in length from seven inches in length to eight and ½ inches in length. (Pl.'s Ex. 9). Representative samples of the defendants were admitted at trial as Plaintiff's Exhibits 1–8.

Some AK's have "milled" receivers, meaning that the receiver is sculpted out of a single piece of metal and is threaded at the front to receive the barrel. Other models, such as the AKM, are not milled but are stamped out of sheet metal. In such models, the receiver is not threaded. To insert the barrel, a separate part called a "barrel mount," "barrel block," or "trunion" (these terms are synonymous for purposes of this case) must be attached to the front portion of the receiver.

A receiver is similar to the chassis of a car. It houses the operational parts that make a gun fire, much like a chassis houses the engine, transmission and other mechanisms necessary to make an automobile operate. The parts typically housed by a receiver are the gun's firing mechanisms—hammer, bolt, trigger, sear, and firing pins. York admitted in his deposition that the defendants provide housing for the hammer, bolt and firing mechanisms. (Pl.'s Ex. 23 at 2).

On two earlier occasions, in 1993 and 1994, York had encountered difficulties with the United States when he attempted to import machinegun receivers from Sten and Karl Gustaf. In connection with York's attempted importation of the Karl Gustaf machineguns, York was sent a diagram and instructions showing how a receiver must be destroyed. The instructions stated: "The receiver must be completely severed in the specified locations with a cutting torch which displaces at least ¼ inch of metal. Saw cutting is not acceptable. (Pl.'s Ex. 27)". The illustration showed three cuts made through the receiver. The defendants were not cut in the manner described in Exhibit 27.

## CONCLUSIONS OF LAW

This is an action for civil forfeiture. Jurisdiction of the court is invoked under 28 U.S.C. §§ 1345 and 1355. Venue is proper under 28 U.S.C. § 1395 and is not disputed.

The United States contends that forfeiture of the defendants is authorized by 19

U.S.C. § 1595a(c)(2)(B) and 18 U.S.C. § 545.

■■■■ A forfeiture proceeding is an in rem proceeding, based upon the legal fiction that the property itself is guilty of a crime or is proceeds of a crime. *United States v. $149,442.43*, 965 F.2d 868, 876 (10th Cir.1992). The government bears the initial burden of showing probable cause for instituting the forfeiture procedure. The standard for establishing probable cause is similar to the standard applied to arrests, searches, and seizures. *Id.* Once probable cause has been established, the claimant bears the burden of proving, by a preponderance of the evidence, that the property is not subject to forfeiture. *Id.* at 877.

*Forfeiture under 19 U.S.C. § 1595a(c)(2)(B)*

Section 1595a(c)(2)(B) authorizes forfeiture of merchandise if "its importation or entry requires a license, permit or other authorization of an agency of the United States Government and the merchandise is not accompanied by such license, permit or authorization." 19 U.S.C. § 1595a(c)(2)(B). According to the United States, the defendants can be forfeited under this statute because 27 C.F.R. § 178.112 requires a permit to import receivers into the United States, the defendants are receivers, and Interport did not have the required permit.[2] The parties do not dispute that a permit is required to import receivers and Interport did not have the required permit. (Pretrial Order at 3) The sole question is whether the defendants are, in fact, receivers.

27 C.F.R. § 179.11 defines a "receiver" (including a machinegun receiver) as follows:

*Frame or receiver.* That part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel.

27 C.F.R. § 179.11.

■■■ Interport argues that under the regulation, the defendants are not receivers because they are not in a condition to receive a barrel, that is, with trunions attached or readily attachable. (Barrels are not mounted on AKMS by threading but by use of a trunion.) Interport maintains that to fall within the regulation's definition of a receiver, the part must be able to receive a barrel, and the use of the word "usually" means that threading is but one of the ways a barrel can be attached.

In accordance with the first principle of statutory construction, the court begins its analysis of § 179.11 with the plain language of the regulation. *See Aramark Corporation v. N.L.R.B.*, 179 F.3d 872, 878 (10th Cir.1999). There is nothing ambiguous about the regulation. To qualify as a receiver, a part *must* provide "housing for the hammer, bolt or breechblock, and firing mechanism." 27 C.F.R. § 179.11. Those are the only mandatory elements. There is no language in the regulation that a receiver must also be able to receive a barrel, by threading or some other means, the interpretation urged by Interport. Because the defendants do provide housing for a hammer, bolt, and firing mechanism, (Pl.'s Ex. 23 at 2), they meet the regulatory definition of a receiver and are subject to forfeiture under 19 U.S.C. § 1595a(c)(2)(B).

*Forfeiture under 18 U.S.C. § 545*

■■■ Section 545 reads in pertinent part: Whoever knowingly and wilfully, with intent to defraud the United States ... makes out or passes, or attempts to

---

**2.** 27 C.F.R. § 178.112 reads: "No firearm, firearm barrel, or ammunition shall be imported or brought into the United States ... unless the Director [of the ATF] has authorized the importation of the firearm, firearm barrel, or ammunition." The parties have stipulated that receivers are firearms as defined by the Gun Control Act, 18 U.S.C. § 921 et seq. and the National Firearms Act, 26 U.S.C. § 5801 et seq. (Pretrial Order at 3). The definition of receiver under 27 C.F.R. § 178.112 applies to both the Gun Control Act and the National Firearms Act.

pass, through the customhouse any false, forged, or fraudulent invoice or other document or paper ... [penalty omitted]. Merchandise introduced into the United States in violation of this section, or the value thereof ... shall be forfeited to the United States.

18 U.S.C. § 545.

The United States contends that forfeiture under § 545 is authorized because William York described the defendants as "fireboxes" on the Form 6 and stated that the shipment of AKM parts did not contain receivers.

Although the court has concluded that the defendants are, in fact, receivers, the inquiry does not end there. To violate § 545, York must have acted "knowingly and willfully" and with "intent to defraud the United States." 18 U.S.C. § 545.

The following evidence supports the United States' claim that York acted with the requisite intent: York has spent twenty years importing and selling weapons and parts, including receivers for machineguns and other arms; he has testified as an expert in court; he used the term "fire control box," a term he apparently created, to describe the defendants; York knew importation of AKM machinegun receivers was illegal; he also knew how a receiver must be cut to comply with government regulations, and the defendants were not cut in that manner.

The above evidence is sufficient to meet the United States' burden of establishing probable cause that York, on behalf of Interport, acted with the requisite intent in completing and submitting the Form 6. The evidence produced by Interport did not rebut the showing made by the United States. Therefore, the showing of probable cause is sufficient to establish the forfeiture of the defendants. *United States v. $149,442.43*, 965 F.2d 868, 873, 876 (10th Cir.1992) (holding that if claimant does not rebut probable cause by a preponderance of the evidence, the property is subject to forfeiture).

Accordingly, forfeiture of the defendants is appropriate under 18 U.S.C. § 545.

SO ORDERED.